### In re HARRINGTON.

(District Court, N. D. New York.  December 27, 1912.)

1. BANKRUPTCY (§ 200*)—JUDGMENT—EXECUTION—LIEN.

Where a creditor of a bankrupt obtained a judgment on a dischargeable debt, the judgment, on being duly entered and docketed, became a lien on any real estate which the bankrupt owned, or he afterwards acquired before the filing of a bankruptcy petition, and, on the issuing of an execution and the making of a levy, a lien would also be obtained on all personal property not exempt from levy and sale on execution, but such execution and levy, if made within four months before bankruptcy, would fall on the debtor being adjudicated a bankrupt, as provided by Bankruptcy Act July 1, 1898, c. 541, § 67f, 30 Stat. 565 (U. S. Comp. St. 1901, p. 3450).

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 289, 296–300, 306–316; Dec. Dig. § 200.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. BANKRUPTCY (§ 399*)—EXEMPTIONS—WAGES—WAIVER.

Where a bankrupt failed to claim certain wages earned prior to adjudication and unpaid as exempt, the exemption, if any, was waived.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 669; Dec. Dig. § 399.*]

3. BANKRUPTCY (§ 200*)—LIEN CREDITOR—WAGES.

A creditor having recovered judgment against a bankrupt within four months prior to adjudication on a dischargeable debt, execution was issued and returned unsatisfied. After the debtor had been adjudged a bankrupt, the state court ordered execution against the bankrupt's salary to the extent of 10 per cent. thereof, as authorized by Code Civ. Proc. N. Y. § 1391, the enforcement of which was thereafter enjoined by the bankruptcy court. Held that, though the judgment under the state law could not be canceled of record until the expiration of a year from the date of the bankruptcy adjudication, its enforcement was nevertheless suspended by the bankruptcy proceedings from the date of the adjudication.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 289, 296–300, 306–316; Dec. Dig. § 200.*]

In Bankruptcy. In the matter of bankruptcy proceedings of Jay C. Harrington. On motion by Calvin W. French, a judgment creditor, to vacate or modify an order restraining the enforcement of the judgment against a portion of the bankrupt's wages under the state statute. Denied.

Claude E. Guile, of Fulton, N. Y., for creditor.
Mead & Stranahan, of Fulton, N. Y., for bankrupt.

RAY, District Judge. [1] August 7, 1912, Calvin W. French, the moving creditor, obtained a judgment against the above-named Jay C. Harrington, now bankrupt, for the sum of $2,120.59, in the Supreme Court of the state of New York, on a claim or demand from which a discharge in bankruptcy is a release. Such judgment was duly entered and docketed and became a lien on any real estate which the bankrupt owned, and would have attached as a lien to any real property thereafter acquired before the filing of a petition in bankruptcy. By issuing execution and making a levy, a lien would also be obtained on all personal property not exempt from levy and sale on execution; but such execution and levy, if made within four months of the filing of a petition, would of course fall. · Section 67f, Bankruptcy Act, which provides:

"That all levies, judgments, attachments, or other liens, obtained through legal proceedings against a person who is insolvent, at any time within four months prior to the filing of a petition in bankruptcy against him, shall be deemed null and void in case he is adjudged a bankrupt, and the property affected by the levy, judgment, attachment, or other lien shall be deemed wholly discharged and released from the same, and shall pass to the trustee as a part of the estate of the bankrupt, unless the court shall, on due notice, order that the right under such levy, judgment, attachment, or other lien, shall be preserved for the benefit of the estate; and thereupon the same may pass to and shall be preserved by the trustee for the benefit of the estate as aforesaid."

French did issue an execution which, on the 10th day of August, 1912, was returned wholly unsatisfied.

[2] On the 13th day of August, 1912, the said judgment debtor, Jay C. Harrington, was duly adjudicated a bankrupt. Since that time and in due course he has been granted a discharge in bankruptcy. August 22, 1912, execution against the salary of Harrington to the extent of 10 per cent. thereof, as authorized by section 1391 of the Code of Civil Procedure of the state of New York, was ordered by the Supreme Court, or a judge thereof, and levy was made August 30, 1912. September 30, 1912, this court enjoined the enforcement of such order, but allowed the 10 per cent. to remain in custody of the law until the question of a discharge should be determined. That has been done. Harrington's salary of $100 per month for August, 1912, did not fall due and become payable until the end of the month, but $34.94 was actually earned at the time he was adjudicated a bankrupt. He made no claim that this was exempt under the bankrupt act. If exempt, Harrington could waive the exemption by not claiming it. In such case it would belong to the trustee. In re Driggs, Ex parte Raymond et al. (D. C.) 171 Fed. 897.

[3] The creditor, French, contends that under the garnishee execution, pursuant to section 1391, Code of Civil Procedure, state of New York, he is entitled to the 10 per centum of such salary down to the time such judgment shall be canceled pursuant to the provision of section 150 of the Debtor and Creditor Law of the state of New York (Consol. Laws 1909, c. 12). This section, in substance and effect, provides that, at any time after one year has elapsed since the bankrupt was discharged from his debts, he may apply to the court in which judgment was rendered against him for an order directing the judgment to be canceled and discharged of record. The same section prescribes the procedure in such case.

I do not think this contention can be sustained. The provisions of the Bankruptcy Act are paramount to state statutes. The judgment of French was obtained within the four months preceding the adjudication in bankruptcy, and, even if under the Code of Civil Procedure made a lien on wages earned and such lien relates back to the date of the judgment, such lien, being within four months, would fall with the debt represented by the judgment. This debt represented by this judgment was provable in bankruptcy.

The bankrupt is required to schedule his debts owing and also his property as of the date of filing his petition.

All proceedings relate to the time of the adjudication. It is then that the title to the bankrupt's property vests in the trustee, and the property thereafter acquired, including wages earned thereafter, does not pass to the trustee and is not affected by the proceedings in bankruptcy. So the debts which are dischargeable and which are discharged if a discharge is granted, are those existing at the time of the adjudication, or of the filing of the petition in bankruptcy. If the discharge is granted, it relates back to the adjudication and releases the bankrupt from all liability on such debts as were provable in bankruptcy

and existed at that time, due or not due, except such as are not affected by a discharge, but does not release the bankrupt from debts contracted subsequent to the adjudication. In Collier on Bankruptcy (9th Ed.) 362, 363, 364, it is said:

"A discharge is personal to the debtor. It follows therefore that a lien in good faith is not affected thereby. This doctrine should not, however, be confused with the other which avoids all liens through legal proceedings if within four months of the bankruptcy. The bankruptcy law does not continue a dischargeable debt for the purpose of permitting a lien to be created after the adjudication, but only to preserve and enforce a lien in existence at the date of the adjudication. The discharge, when granted, relates back to the date of adjudication, and property acquired by the bankrupt, intervening the filing of the petition and the granting of the discharge, is not appropriated to payment of his debts. Thus, an assignment of unearned wages to secure a dischargeable debt creates no lien until the wages have been earned and cannot be enforced, as to wages earned after the date of adjudication, after the bankrupt has been discharged. Liens continuing valid, it often becomes necessary to destroy their effect on possible after-acquired property. Hence the provisions in the state laws, permitting proceedings to compel the cancellation of docketed judgments barred by a discharge."

As the discharge in bankruptcy of Harrington relates back to the adjudication, August 13, 1912, and releases him from all liability on the judgment in question, obtained August 7, 1912, and the debt represented thereby, it is immaterial that under the provisions of the statutes of the state of New York he cannot secure a cancellation of record of such judgment until the expiration of one year after the granting of such discharge. The creditor cannot enforce it during that year against after-acquired property or wages earned after adjudication. All this, in effect, was decided by Judge Holt in Re Van Buren (D. C.) 164 Fed. 883, 21 Am. Bankr. Rep. 338, and by Judge Hand in Re Sims, 23 Am. Bankr. Rep. 899 (D. C.) 176 Fed. 645. There, as here, an order had been granted by the bankruptcy court staying proceedings for the enforcement of such an execution issued under section 1391 of the Code of Civil Procedure of the state of New York. There, as here, the motion was to vacate such stay. The learned judge, Judge Holt, said:

"But the judgment was recovered before the adjudication in bankruptcy. All the bankrupt's property down to the time of the adjudication is applicable to the payment of that judgment ratably with the bankrupt's other debts, but the discharge of the bankrupt, if it shall be granted, is a bar to the enforcement of that judgment against any property subsequently acquired. Under these circumstances, I think that the enforcement of the judgment against any portion of the bankrupt's present salary should be enjoined until the question is determined whether he shall receive a discharge. But as, if the entire salary were paid to the bankrupt, the probability is that the judgment creditor would never collect the tenth to which he is entitled if a discharge is refused, an order will be made directing the bankrupt's employers to withhold a tenth of the salary until that question is determined. The motion to absolutely vacate the stay, however, is denied."

In Re Sims, supra, Judge Hand held:

"Where, prior to adjudication, judgment creditors of a bankrupt had secured, under section 1391 of the New York Code of Civil Procedure, the right to reach 10 per cent. of his salary, they are entitled to collect salary then

falling due, and a stay of their proceedings will be vacated to that extent, but continued as to salary earned after the adjudication, and which would be covered by the bankrupt's discharge,"

—and said:

"Should I allow the creditors to levy on wages in fact earned in the future, they would recover upon a past debt from property earned subsequently. This contradicts the whole purpose of a discharge, and I cannot permit it without violating the act. * * * Therefore, for the purposes of this act, I shall decide that the wages, which arise from services rendered after petition filed, are covered by the discharge, and that the stay should continue as to that."

It is of course true that the judgment does not become an absolute nullity for all purposes until discharged of record. The Congress of the United States did not undertake to provide for the cancellation, of judgments entered in the state courts on the granting of a discharge; but it has said, in substance, that the debt represented by this judgment is provable and dischargeable in bankruptcy, and that the debt and judgment cannot be enforced against the bankrupt or his property except in so far as it had been made a lien thereon more than four months prior to the adjudication. See, also, Walker v. Muir, 127 App. Div. 163, 111 N. Y. Supp. 465. By section 63 it is provided that:

"Debts of the bankrupt may be proved and allowed against his estate which are (1) a fixed liability, as evidenced by a judgment or an instrument in writing, absolutely owing at the time of the filing of the petition against him, whether then payable or not," etc.

By section 17, it is provided:

"A discharge in bankruptcy *shall release a bankrupt* from all his provable debts except such as are,"

. And then follows a list of those not dischargeable, but there is no pretense this debt represented by this judgment in favor of French belongs to the excepted class. It is within the province of a state court to keep one of these judgments, or debts evidenced by a judgment provable and dischargeable in bankruptcy, uncanceled of record; but it is far beyond its power to override or nullify the bankruptcy act and authorize the collection of any part of such a judgment by any process or means whatever, unless it be to enforce a lien acquired by judgment more than four months prior to the filing of a petition in bankruptcy. Even an express agreement for a lien on wages to be earned is nullified or made nonenforeceable by bankruptcy and discharge before the wages are actually earned. In re West (D. C.) 11 Am. Bankr. Rep. 782, 128 Fed. 205. The court said:

"If further earnings in such a case can be said to have a potential existence, they are the subject of an agreement for a lien; but the lien or so-called equitable interest does not attach until the wages come into existence, and until the lien does attach there is no lien. The discharge in bankruptcy operated to discharge those obligations (to give a lien) *as of the date of the adjudication* so that the obligations were discharged before the wages intended as security were in existence. The law does not continue an obligation in order *that there may be a lien*, but only does so because there *is one*. The effect of the discharge upon the prospective liens was the same as though the

debts had been paid before the assigned wages were earned. The wages earned after the adjudication became the property of the bankrupt clear of the claims of all creditors."

In the case at bar Harrington was adjudicated a bankrupt before any wages were due and before any execution to attach wages had been authorized or issued, and the discharge relates back to a date prior to any possible lien on wages and operates as a discharge of the debt prior to the time a lien was authorized. The judgment of French against Harrington was only continued for the purpose of enforcing a lien, if there was one, but this was impossible, more than four months prior to bankruptcy, and not for the purpose of allowing one to be created. Or, as said by Collier (9th Ed.) p. 363:

"The bankruptcy law does not continue a dischargeable debt for the purpose of permitting a lien to be created after the adjudication, but only to preserve and enforce a lien in existence at the date of the adjudication."

And it may be added such lien must be one not annulled by the act itself.

Section 150 of the Debtor and Creditor Law of New York provides for the discharge of a bankrupt from a judgment, and, except as to the mere procedure, reads as follows:

"Discharge of Bankrupt from Judgment. At any time after one year has elapsed, since a bankrupt was discharged from his debts, pursuant to the acts of Congress relating to bankruptcy, he may apply, upon proof of his discharge, to the court in which a judgment was rendered against him, or if rendered in a court not of record, to the court of which it has become a judgment by docketing it, or filing a transcript thereof, for an order, directing the judg- ment to be canceled and discharged of record. If it appears upon the hearing that he has been discharged from the payment of that judgment or the debt upon which such judgment was recovered, an order must be made directing said judgment to be canceled and discharged of record; and thereupon the clerk of said court shall cancel and discharge the same by marking on the docket thereof that the same is canceled and discharged by order of the court, giving the date of entry of the order of discharge. Where the judgment was a lien on real property owned by the bankrupt prior to the time he was ad- judged a bankrupt, the lien thereof upon said real estate shall not be affected by said order and may be enforced, but in all other respects the judgment shall be of no force or validity, nor shall the same be a lien on real property acquired by him subsequent to his discharge in bankruptcy."

This is a confirmation of what has been said. The year's delay is made necessary by section 15 of the Bankruptcy Act, which provides that a discharge may be revoked on application filed within a, year after same was granted. It was not intended by the Legislature to extend the validity of the judgment so as to be a lien, but not to dis- charge it until the discharge becomes a finality. It follows that the order was properly granted and must be continued in force. As to that part of the wages earned prior to the filing of the petition, on the showing made, it should be demanded by the trustee and paid over to him. But this question is not before me. Application should be made to the referee for an order directing the trustee to collect. If denied, the legality of his order can be determined on review.

Motion denied.